## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JOEY S. WESTBROOK,                                  Case No. 1:14-cv-934
      Petitioner,

                                Dlott, J.
      vs.                                           Wehrman, M.J.

WARDEN, SOUTHEASTERN                        **REPORT AND**
CORRECTIONAL INSTITUTION,[1]                **RECOMMENDATION**
      Respondent.

      Petitioner, an inmate in state custody at the Southeastern Correctional Institution in

Lancaster, Ohio, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §

2254.  (Doc. 1).  This matter is before the Court on respondent's motion to dismiss (Doc. 9),

which petitioner opposes.  (*See* Doc. 12).[2]

## I.  PROCEDURAL HISTORY

### A.  State Proceedings

### 1.  Trial Proceedings:  February 2008-January 6, 2009

      On February 5, 2008, the Scioto County, Ohio, grand jury returned an indictment charging

petitioner with one second-degree felony count of trafficking in drugs (crack cocaine) in violation

of Ohio Rev. Code § 2925.03(A)(2) & (C)(4)(e) (Count 1); one third-degree felony count of

---

[1] In the petition, petitioner has named the Director of the Ohio Department of Rehabilitation and Correction as the respondent.  (*See* Doc. 1).  However, the proper party respondent is actually the Warden of the Southeastern Correctional Institution (SCI), where petitioner is incarcerated, because SCI's Warden is the individual who currently has custody of petitioner.  *See* Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254.  Therefore, the caption of this case has been changed to reflect the proper party respondent.

[2] Respondent has also separately filed 46 exhibits obtained from the underlying state-court record, as well as the trial transcript, as support for the motion to dismiss.  (*See* Doc. 8).

trafficking in drugs (oxycodone) in violation of Ohio Rev. Code § 2925.03(A)(1) & (C)(1)(c)

(Count 2); one second-degree felony count of possession of drugs (crack cocaine) in violation of

Ohio Rev. Code § 2925.11(C)(4)(d) (Count 3); and one third-degree felony count of possession of

drugs (oxycodone) in violation of Ohio Rev. Code § 2925.12(A) & (C)(1)(b) (Count 4).  (Doc. 8,

Ex. 1).  In June 2008, a superseding indictment was returned, which added three more charges of

conspiracy to traffic in drugs in violation of Ohio Rev. Code § 2923.01/2925.03(A) & (C)(3)(c)

(Count 5), possession of criminal tools in violation of Ohio Rev. Code § 2923.24(A)/2923.24(C)

(Count 6), and tampering with evidence in violation of Ohio Rev. Code § 2921.12(A)(1) (Count

7).  (*Id.*, Ex. 11).[3]  The facts giving rise to the seven criminal charges were summarized as follows

by the Ohio Court of Appeals, Fourth Appellate District, based on evidence presented at

petitioner's trial:[4]

> Stephen Timberlake ("Timberlake"), a narcotics investigator with the Portsmouth
> Police Department, received a phone call from a CI who claimed that a black male
> known as "Joe" was staying at [Betty Jo] Duff's apartment on Rhodes Avenue in
> New Boston, Ohio while selling cocaine and oxycodone.  The CI also told him that
> Duff had "started to use drugs again" and was "strung out."
>
> Later that day, Duff contacted Timberlake.  She told him that a drug dealer named
> Joe Westbrook was inside her apartment . . . with a bag of 80mg oxycodone tablets
> and an unknown amount of cocaine.  Duff feared for her own safety and that of her
> daughter [Stephanie Young].  Duff told Timberlake that she believed Westbrook

---

[3] On July 29, 2009, after the superseding indictment was returned charging petitioner with seven offenses,
the original four-count indictment was dismissed.  (*See* Doc. 8, Ex. 13).

[4] The Ohio appellate court summarized the facts in its direct appeal decision filed June 9, 2010.  (*See* Doc.
8, Ex. 25).  28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas
corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a
State court shall be presumed correct" unless the petitioner rebuts the presumption by "clear and convincing
evidence."  Petitioner has not presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual
findings quoted herein.  Therefore, the appellate court's findings are presumed to be correct.  *See McAdoo v. Elo,* 365
F.3d 487, 493-94 (6th Cir. 2004).

2

had a firearm.  She also told Timberlake that Westbrook had a white Ford Mustang convertible with an Illinois license plate in the driveway and that she thought it was a rental car.  Officers from the PPD verified that a white Ford Mustang convertible was parked in the rear of Duff's residence.  It had an Illinois license plate, and the officers confirmed it was a rental car.

Based on this information, Timberlake swore out an affidavit that he used to obtain a search warrant.  After the PPD learned that Westbrook and Young had left Duff's apartment in the white convertible, they initiated a traffic stop of the vehicle.  Once Westbrook and Young were in custody, the PPD executed the search warrant.

While being questioned by the PPD, Young removed a baggie containing crack cocaine and oxycodone tablets from her pants and gave it to the officers.  She told the PPD that prior to the traffic stop, Westbrook learned the police were following them.  He threw the baggie and said, "Here, stuff this" – meaning that he wanted Young to put the baggie in her vaginal tract.  According to Young, she made a drug sale on Westbrook's behalf earlier that day.

In Duff's apartment, police found baggies of oxycodone and crack cocaine inside a sock in a baby crib in the bedroom Westbrook and Young shared.  Duff entered the apartment during the search, removed a set of digital scales from her purse, and gave them to police.  She claimed they belonged to Westbrook.

(*Id.*, Ex. 25, pp. 4-6, at PAGEID#: 225-27).

Prior to trial, petitioner's counsel filed motions to suppress evidence obtained during the traffic stop and search of Duff's apartment.  (*See id.*, Exs. 3-4).  Following a hearing held on May 27, 2008 and the submission of a post-hearing supplemental memorandum by petitioner's counsel, the trial court issued an order on June 13, 2008 summarily denying the suppression motions.  (*See id.*, Exs. 6-7).  Thereafter, in response to a motion filed by petitioner's counsel asking the trial court to state "the findings of fact on which the June 13, 2008 Judgment Entry is predicated," the trial court issued another order on July 23, 2008 denying the suppression motions with findings of fact.  (*See id.*, Exs. 8, 10).

The matter proceeded to trial before a jury.  Apparently, after the jury was impaneled, petitioner "fled the courthouse, and the State elected to continue with the trial in his absence." (*See id.*, Ex. 25, p. 4, at PAGEID#: 225).  At the conclusion of trial, the jury found petitioner guilty as charged.  (*Id.*, Ex. 15).  It appears from the record that petitioner was captured several weeks later in West Virginia.  (*See id.*, Ex. 25, p. 6, at PAGEID#: 227).   Following a sentencing hearing on January 6, 2009, the trial court issued a judgment entry sentencing petitioner to an aggregate prison term of thirty-two years (32) years.  (*See id.*, Ex. 16).  The aggregate prison term consisted of the following consecutive sentences:  eight (8) years for trafficking in crack cocaine; five (5) years for trafficking in oxycodone; eight (8) years for possession of crack cocaine; five (5) years for possession of oxycodone; one (1) year for possession of criminal tools; and five (5) years for tampering with evidence.[5]  (*See id.*).

## 2.  **Direct Appeal (Case No. 09CA3277)/Resentencing Proceeding:  February 2009-August 27, 2010**

With the assistance of new counsel for appeal purposes, petitioner timely appealed to the Ohio Court of Appeals, Fourth Appellate District.  (Doc. 8, Ex. 17).  In the appellate brief filed by counsel on petitioner's behalf, petitioner asserted the following assignments of error:

1. The trial court erred to the prejudice of the Defendant-Appellant when it failed to suppress the evidence obtained pursuant to the search warrant executed at the residence.

2. Defendant-Appellant was denied effective assistance of counsel as guaranteed by the Sixth Amendment to the Constitution of the United States of America and Article One Section Ten of the Constitution of Ohio.

---

[5] Petitioner was sentenced to a concurrent five (5) year prison term on the conspiracy-to-traffic-in-drugs count.  (*See* Doc. 8, Ex. 16).

4

      3.   The trial court erred to the prejudice of the Defendant-Appellant when it sentenced him to consecutive terms of imprisonment for Counts One, Two, Three, and Four of the indictment.

(*Id.*, Ex. 20).

On June 9, 2010, the Ohio Court of Appeals affirmed in part and reversed in part the trial court's judgment.  (*See id.*, Ex. 25).  Specifically, the court overruled petitioner's first and second assignments of error and sustained the third assignment of error to the extent petitioner contended that (1) his convictions for trafficking in and possession of crack cocaine should have merged for sentencing purposes; (2) his convictions for trafficking in and possession of oxycodone should have merged for sentencing purposes; and (3) he was improperly convicted of second-degree felonies on the crack cocaine-related charges.  (*Id.*, p. 27, at PAGEID#: 248).  The court vacated petitioner's sentences for possessing and trafficking crack cocaine and oxycodone, as well as the second-degree felony crack-cocaine convictions, and remanded the matter to the trial court for "a new sentencing hearing" for the purpose of entering third-degree felony convictions on the crack cocaine-related charges and merging the trafficking and possession charges for each drug in accordance with the State's election of "which allied offense to pursue in sentencing."  (*See id.*, pp. 23-24, 27, at PAGEID#: 244-45, 248).

On August 25, 2010, the trial court held a hearing in accordance with the remand order.  (*See id.*, Ex. 26).  Petitioner was represented by his appellate counsel at that hearing.  (*See id.*).  On August 27, 2010, the trial court issued a new Judgment Entry changing the crack cocaine-related convictions to third-degree felonies and resentencing petitioner to an aggregate prison term of sixteen (16) years after merging Counts 3 and 5 with Count 1 and Count 4 with Count 2.

(*Id.*).  The new aggregate prison terms consisted of the following consecutive sentences:  five (5) years for the crack cocaine trafficking offense charged in Count 1; five (5) years for the oxycodone trafficking offense charged in Count 2; one (1) year for the possession of criminal tools offense charged in Count 6; and five (5) years for the tampering with evidence offense charged in Count 7.  (*Id.*, at PAGID#: 252).   It appears from the record that no appeal was taken from the August 27, 2010 resentencing entry.

3.  **Delayed Appeal To Ohio Supreme Court: April 22-June 8, 2011**

Eight months later, on April 22, 2011, petitioner filed a *pro se* notice of appeal and motion for leave to file a delayed appeal to the Ohio Supreme Court from the Ohio Court of Appeals' June 9, 2010 direct appeal decision.  (Doc. 8, Exs. 27-28).  Petitioner contended as cause for his delay in filing that he "was under the implied understanding" that his appellate counsel had prepared and filed a timely appeal on his behalf.  (*See id.*, Ex. 28).  Petitioner stated that he learned no appeal had been filed when a deputy clerk of the Ohio Supreme Court responded on February 1, 2011 to his inquiry asking about the status of his appeal.  (*Id.*, at PAGEID#: 260).  On June 8, 2011, the Ohio Supreme Court denied petitioner's motion for delayed appeal without opinion.  (*Id.*, Ex. 29).

4.  **Post-Conviction Relief Motion/Appeal (Case No. 11CA3455):  June 23, 2011-October 31, 2012**

On June 23, 2011, petitioner next filed a *pro se* pleading entitled "Motion For Relief From Judgment Pursuant To [R]ule 60(B)" with the trial court.  (Doc. 8, Ex. 30).  In that pleading, petitioner requested that the judgment of conviction be reconsidered on the ground that a "miscarriage of justice has taken place."  (*Id.*, at PAGEID#: 299).  Petitioner asserted "[t]he

following apply in the instant case":

1.  Wrongful conviction;

2.  New information discovered since trial that will help adjudicate this Petitioner;

3.  Is material to issues in question;

4.  Is not merely cumulative to the former evidence;

5.  If granted a hearing, the Petitioner will prove to this court the errors and travesty of justice that occurred;

6.  Weight of evidence does not support verdict. . . .  The crimes that took place in the instant matter were not supported by sufficient evidence. . . ;

7.  The trial court was in error for allowing hearsay testimony;

8.  The violations of Due Process increased the magnitude of fairness wh[ic]h has hampered the substantial rights of the Petitioner. . . .  Plain error as alle[]ge[d] by allowing two allegedly inadmissible hearsay statements;

9.  Petitioner has raised issue[s] that call for a hearing.  The past decision of this Court "abused its discretion" which . . . implies an attitude of the court characterized as unreasonable and arbitrary or unconscionable. . . ;

10. The Petitioner's Civil Rights have been violated. . . .  The court failed to protect the Civil Rights of both the State and United States Constitutions. . . . When protected interest[s] are implicated, the right under Civil Rule 60(B) entitling the Petitioner to a hearing is paramount. . . .

11. It could also be argued that the offenses are allied offenses of similar import and calls into question the proper nature of the indictments used. . . .

(*Id.*, at PAGEID#: 299-301).

On September 16, 2011, the trial court overruled the motion, which it construed as a petition for post-conviction relief, on the ground that the petition was "barred by time inasmuch as it must be filed no later than one hundred eighty (180) days after the date on which the trial transcript was filed in the Court of Appeals."  (*Id.*, Ex. 33).

7

Petitioner filed a timely *pro se* notice of appeal to the Ohio Court of Appeals, Fourth Appellate District, in Case No. 11CA3455.  (*Id.*, Ex. 34).  Thereafter, new counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), on petitioner's behalf, as well as a motion to withdraw as counsel in the matter.  (*See id.*, Exs. 35-36).   In the *Anders* brief, counsel asserted as a potential assignment of error that the trial court erred when it construed petitioner's Rule 60(b) motion for relief from judgment as a petition for post-conviction relief.  (*See id.*, Ex. 35).

On December 30, 2011, the appellate court issued an order granting petitioner the opportunity to "file his own brief."  (*Id.*, Ex. 37).  Instead of filing a brief, petitioner filed an application pursuant to Ohio R. App. P. 26(B) for reopening of the appeal.  (*Id.*, Ex. 38).  In the application, petitioner contended that his attorney in the appeal was ineffective for failing to assert the following claims as proposed assignments of error:

1. The trial court erred in misinforming Defendant-Appellant of the maximum sentence which could be imposed should the Appellant proceed to trial and be found guilty on all counts and specifications in the indictment and such deprived the Appellant of the Sixth Amendment right to effective assistance of counsel . . . as counsel is required to act as a zealous advocate acting on the part of his client.

2. Trial counsel failed to provide effective assistance of counsel by not challenging and arguing that the crimes charged in the multi-count indictment should merge as allied offenses of similar import, and . . . by not questioning the trial court's admonishment of the maximum sentence that could be imposed should appellant proceed to trial.

3. The trial court committed plain error when it failed to hold a hearing to determine the applicability of allied offenses and whether Ohio Revised Code §2941.25(A) should have applied to Appellant's case.

(*See id.*).

8

On April 27, 2012, the Ohio Court of Appeals issued an order denying petitioner's reopening application and instead treating the pleading as a *pro se* brief; the court reasoned that "[b]ecause this appeal has not yet been decided, App.R. 26(B) is inapplicable." (*Id.*, Ex. 39). Thereafter, on October 31, 2012, the court issued the final Decision and Judgment Entry in the matter. (*Id.*, Ex. 41). The court overruled the assignment of error proposed by counsel in the *Anders* brief, granted the attorney's motion to withdraw as petitioner's counsel, and overruled petitioner's *pro se* assignments of error. (*See id.*).[6]

### B. Federal Habeas Corpus Petition

The instant federal habeas action commenced on December 5, 2014. (*See* Doc. 1). However, for statute of limitations purposes, it is assumed that petitioner's habeas petition was filed on November 18, 2014, the date that petitioner signed the petition. (*See* Doc. 1, at PAGEID#: 59).[7] In the petition, petitioner asserts the following grounds for relief, which are quoted verbatim from his *pro se* pleading:

**Ground One:** Petitioner's 6th and 14th Amendment rights as guaranteed by the

---

[6] It is noted that on November 15, 2011, while the appeal was pending before the Ohio Court of Appeals, petitioner filed a second *pro se* notice of appeal from the trial court's September 16, 2011 decision denying his motion for relief from judgment. (*See* Doc. 8, Ex. 42). That appeal (Case No. 11CA3460) was *sua sponte* dismissed on January 17, 2012 because petitioner failed to perfect the appeal and did not respond to the court's order directing him to show cause why the appeal should not be dismissed for lack of jurisdiction. (*Id.*, Ex. 46). The appeal was dismissed *before* the final entry was filed in Case No. 11CA3455 and, therefore, does not affect or otherwise have any impact on the adjudication of the statute-of-limitations issues involved in this case.

[7] It is well-settled that the filing date of a federal habeas corpus petition submitted by a *pro se* prisoner is the date on which the prisoner provides his papers to prison authorities for mailing. *See Houston v. Lack,* 487 U.S. 266 (1988); *see also Miller v. Collins,* 305 F.3d 491, 497-98 (6th Cir. 2002); *Goins v. Saunders,* 206 F. App'x 497, 499 n.1 (6th Cir. 2006). Petitioner does not indicate when he placed his petition in the prison mailing system for delivery to the Court. The undersigned assumes in petitioner's favor that he did so on the same date that he signed the petition.

9

U.S. Constitution, w[ere] violated, on grounds that appellate counsel Mr. Reed "abandoned" the petitioner's case, by: (a) failing to file a direct appeal (following resentencing hearing); and by abandoning petitioner's case proceedings, for collateral relief; and for failing to file an appeal with the Supreme Court of Ohio.

**Ground Two:** Petitioner's 6th and 14th Amendment rights, as guaranteed by the United States Constitution, were violated, when the Court of Common Pleas denied petitioner his right to counsel of his choice, and where the Common Pleas Court kept the request for different counsel from being "a part of the record" for direct appeal review.

**Ground Three:** Petitioner's 6th and 14th Amendment right to effective assistance of counsel at trial, and on direct appeal, was violated, due to both counsels' failure to raise particular and specific claims at trial, and on direct appeal. Thus, petitioner is entitled to federal habeas corpus relief based on ineffective assnt.

**Ground Four:** Petitioner's 6th and 14th Amendment rights as guaranteed by the U.S. Constitution, w[ere] violated, as a result of appeals judgment (pertaining to his 4th and 6th Amendment claims illegal search and seizure and ineffective assistance of counsel), the Court of Appeals['] judgment was "contrary to," and was "unreasonable application of clearly established court case law."

**Ground Five:** Petitioner is entitled to federal habeas corpus relief on grounds that 4th Amendment rights to be free from an[] illegal search and seizure, w[ere] violated; and on grounds that the Ohio Court of Appeals applied an objectively unreasonable application of federal law as applied towards petitioner's 4th Amendment claims.

**Ground Six:** Petitioner is entitled to habeas corpus relief on grounds that his conviction(s) are based on insufficient evidence, and on grounds of ineffective assistance of appellate counsel, and are against the manifest weight of the evidence.

(Doc. 1, at PAGEID#: 26, 31, 35, 43, 46, 52).

Respondent has filed a motion to dismiss the petition. (Doc. 9). Respondent contends that the petition is subject to dismissal with prejudice because it is barred from review by the applicable one-year statute of limitations governing federal habeas actions by state prisoners, which is set forth in 28 U.S.C. § 2244(d). (*Id.*). Petitioner has filed a brief opposing the motion

10

to dismiss.  (Doc. 12).

## II.  RESPONDENT'S MOTION TO DISMISS (DOC. 9) SHOULD BE GRANTED BECAUSE PETITIONER'S CLAIMS FOR RELIEF ARE TIME-BARRED

Under 28 U.S.C. § 2244(d)(1), as amended by § 101 of the Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, a person in custody

pursuant to the judgment of a state court must file an application for a writ of habeas corpus

within one year from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  Under 28 U.S.C. § 2244(d)(2), the limitations period is tolled during the

pendency of a properly filed application for state post-conviction relief or other collateral review.

The undersigned must first determine which limitations provision set forth in § 2244(d)(1)

applies to petitioner's claims for relief.  As an initial matter, it is clear from the record that §

2244(d)(1)(B) and § 2244(d)(1) (C) are inapplicable because petitioner neither has alleged that he

was prevented from filing a timely habeas petition by any state-created impediment to filing, nor

has asserted a constitutional right newly recognized by the United States Supreme Court and

made retroactively applicable to cases on collateral review.

Respondent contends that the one-year statute of limitations set forth in 28 U.S.C. §

2244(d)(1)(A) governs all of petitioner's claims for relief.  (*See* Doc. 9, p. 17, at PAGEID#: 666).

Under that provision, petitioner's conviction became "final" for statute of limitations purposes on

September 27, 2010, when the 30-day period expired for filing a timely appeal to the Ohio Court

of Appeals from the trial court's August 27, 2010 resentencing entry filed after the Ohio Court of

Appeals vacated the original sentence and petitioner's second-degree felony crack-cocaine

convictions and remanded the matter to the trial court for resentencing in accordance with the

direct appeal decision.[8]  *See* Ohio R. App. P. 4(A); *see also Rashad v. Lafler,* 675 F.3d 564, 568-

69 (6th Cir. 2012) (holding that under *Burton v. Stewart*, 549 U.S. 147 (2007) (per curiam), when

the state appeals court affirms a conviction, but vacates the sentence and remands the case for

resentencing, the judgment becomes "final" for statute of limitations purposes "after direct review

of the new sentence").[9]  Petitioner's unsuccessful motion filed in April 2011 for leave to file a

delayed appeal to the Ohio Supreme Court from the Ohio Court of Appeals' June 9, 2010 direct

appeal decision does not affect the finality determination under 28 U.S.C. § 2244(d)(1)(A) or

otherwise serve to restart the running of the clock.  *See, e.g.*, *Keeling v. Warden, Lebanon Corr.

Inst.,* 673 F.3d 452, 459-60 (6th Cir. 2012) (rejecting the petitioner's argument that his conviction

did not become final under § 2244(d)(1)(A) until after his motion for delayed appeal was denied

---

[8] The deadline date for filing a timely appeal was actually September 26, 2010.  However, because that day fell on a Sunday, the undersigned has assumed in petitioner's favor that the 30-day appeal period was extended to include the next business day of Monday, September 27, 2010.

[9] *But cf. Mackey v. Warden, Lebanon Corr. Inst.,* 525 F. App'x 357, 363 (6th Cir. 2013) (finding *Burton* and *Rashad* were "materially distinguishable" in case where the petitioner obtained a *de novo* resentencing for the limited purpose of remedying "a technical error" regarding post-release control).

by the Ohio Supreme Court);[10] *Quillen v. Warden, Marion Corr. Inst.,* No. 1:12cv160, 2013 WL 1315089, at *5 (S.D. Ohio Mar. 29, 2013) (Barrett, J.) (and numerous cases cited therein) (holding that the magistrate judge had "correctly found" that the petitioner's motions for delayed appeal to the Ohio Court of Appeals and Ohio Supreme Court "did not restart the running of the statute of limitations under § 2244(d)(1)(A)"); *Pierce v. Warden, Ross Cnty. Corr. Inst.*, No. 3:10cv132, 2012 WL 5511220, at *13 (S.D. Ohio Nov. 14, 2012) (Report & Recommendation) (citing *Keeling* in support of holding that because the Ohio Court of Appeals "never re-opened" the petitioner's "direct appeal—i.e., it denied his motion for delayed appeal," the proceedings held on the delayed appeal motion did not factor into the § 2244(d)(1)(A) finality determination), *adopted*, 2013 WL 811568 (S.D. Ohio Mar. 5, 2013).

It appears, as respondent has argued, that the § 2244(d)(1)(A) limitations provision applies to most of petitioner's claims for relief, to the extent they are based on alleged errors that occurred and were discoverable before petitioner's conviction became final on September 27, 2010. Therefore, with respect to those claims, the statute of limitations commenced running one day later, on September 28, 2010, *see* Fed. R. Civ. P. 6(a); *Bronaugh v. Ohio,* 235 F.3d 280, 285 (6th Cir. 2000), and expired one year later in September 2011 absent application of statutory or

---

[10] In *Keeling*, 673 F.3d at 459, the Sixth Circuit recognized the Supreme Court's "narrow" holding in *Jimenez v. Quaterman*, 555 U.S. 113 (2009), that the *granting* of a delayed appeal within the one-year limitations period renders a conviction non-final for statute of limitations purposes because the ruling restores the pendency of the direct appeal. However, the Sixth Circuit went on to point out that the Supreme Court later made it clear in *Gonzalez v. Thaler*, __ U.S. __, 132 S.Ct. 641 (2012), that in contrast to the unique circumstances presented in *Jimenez*, a judgment typically becomes "final" under § 2244(d)(1)(A) when either (1) the Supreme Court affirms a conviction or denies a petition for certiorari filed by a petitioner who pursues direct review "all the way up" to the Supreme Court, or (2) "[f]or all other petitioners, . . . the time for pursuing direct review . . . in state court[] expires." *Keeling,* 673 F.3d at 459-60 (quoting *Gonzalez*, 132 S.Ct. at 653-45).

equitable tolling principles.

Petitioner has alleged in Ground One of the petition that his counsel on direct appeal, who also represented him at the resentencing hearing, was ineffective for (1) leading petitioner to believe that he would perfect an appeal on petitioner's behalf to the Ohio Supreme Court from the Ohio Court of Appeals' June 9, 2010 direct appeal decision, (2) failing to pursue an appeal to the Ohio Court of Appeals from the trial court's August 27, 2010 resentencing decision, and (3) "abandoning" petitioner's case in the post-conviction proceedings. An argument can be made that the limitations provision contained in 28 U.S.C. § 2244(d)(1)(D) applies to the extent that the factual bases for at least a portion of that claim may not have been discoverable before petitioner's conviction became final. However, it is clear from the record that on or about February 1, 2011, petitioner learned that his appellate counsel had not perfected an appeal to the Ohio Supreme Court from the Ohio Court of Appeals' June 9, 2010 direct appeal decision. (*See* Doc. 8, Ex. 28, at PAGEID#: 260). Moreover, petitioner should have known by that time that no appeal had been pursued from the August 27, 2010 resentencing entry. Finally, to the extent that petitioner challenges the assistance he received from another attorney in the post-conviction appeal proceedings,[11] he should have known by December 19, 2011 that the attorney would only file an *Anders* brief and move to withdraw as petitioner's counsel in the matter. (*See id.*, Exs. 35-36). Therefore, even under the later limitations provision, the statute commenced running at the

---

[11] It appears from the record that the attorney who represented petitioner on direct appeal and at resentencing was never involved in the post-conviction proceedings that petitioner initiated in June 2011. Different counsel became involved in the appeal from the denial of petitioner's *pro se* motion for relief from judgment; that attorney filed an *Anders* brief and motion to withdraw as petitioner's attorney with the Ohio Court of Appeals on December 19, 2011. (*See* Doc. 8, Ex. 35).

very latest on December 20, 2011, and expired one year later in December 2012 absent application of statutory or equitable tolling principles.

      During the one-year limitations periods applicable to petitioner's claims for relief, petitioner was entitled to tolling of the statute under 28 U.S.C. § 2244(d)(2) based on any pending "properly filed" applications for state post-conviction relief or other collateral review. *See* 28 U.S.C. § 2244(d)(2); *see also Holland v. Florida,* 560 U.S. 631, 635 (2010); *Allen v. Siebert,* 552 U.S. 3, 4 (2007) (per curiam); *Vroman v. Brigano,* 346 F.3d 598, 602 (6th Cir. 2003). "The tolling provision does not, however, 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run." *Vroman,* 346 F.3d at 602 (quoting *Rashid v. Khulmann,* 991 F. Supp. 254, 259 (S.D.N.Y. 1998)). Once the limitations period is expired, state collateral review proceedings can no longer serve to avoid the statute of limitations bar. *Id.*

      In this case, the § 2244(d)(1)(A) statute of limitations applicable to most of petitioner's claims for relief, which began to run on September 28, 2010, was statutorily tolled during the pendency of petitioner's motion for delayed appeal to the Ohio Supreme Court from the Ohio Court of Appeals' June 9, 2010 direct appeal decision. *Cf. Board v. Bradshaw,* 805 F.3d 769, 771-76 (6th Cir. 2015) (reaffirming prior precedents—*see, e.g., DiCenzi v. Rose*, 452 F.3d 465, 468-69 (6th Cir. 2006); *Searcy v. Carter,* 246 F.3d 515, 519 (6th Cir. 2001); *Anderson v. Brunsman*, 562 F. App'x 426, 430 (6th Cir. 2014); *Applegarth v. Warden, N. Cen. Corr. Inst.*, 377 F. App'x 448, 449 (6th Cir. 2010)—in holding that a motion for delayed appeal to the Ohio Court of Appeals, even if "ultimately unsuccessful," is a "properly filed" motion under Ohio R. App. P. 5 for state collateral relief that serves to toll the limitations period under § 2244(d)(2)). Therefore,

15

the statute of limitations, which had run for approximately 206 days, was tolled from April 22, 2011 (the date petitioner filed his motion for delayed appeal with the Ohio Supreme Court) through June 8, 2011 (the date the Ohio Supreme Court denied the delayed appeal motion).[12] (*See* Doc. 8, Exs. 27-29).

The undersigned will assume in petitioner's favor that the statute-of-limitations clock, which recommenced on June 9, 2011, ran for an additional 14 days for a total of 220 days before it was tolled again by the filing of petitioner's post-conviction motion for relief from judgment on June 23, 2011.[13] (*See id.*, Ex. 30). The post-conviction proceedings concluded on December 17, 2012, when the 45-day period expired for filing an appeal to the Ohio Supreme Court from the Ohio Court of Appeals' October 31, 2012 final entry in that matter.[14] *Cf. Harper v. Warden, Belmont Corr. Inst.*, No. 2:14cv1220, 2015 WL 3867262, at *8 & n.3 (S.D. Ohio June 23, 2015) (Report & Recommendation) (and numerous cases cited therein) (taking into account for statutory tolling purposes the 45-day period in which the petitioner could have sought leave to appeal a state post-conviction ruling to the Ohio Supreme Court), *adopted*, 2015 WL 4538566 (S.D. Ohio

---

[12] In *Lawrence v. Florida,* 549 U.S. 327, 333-34 (2007), the Supreme Court made it clear that in contrast to the provision set forth in 28 U.S.C. § 2244(d)(1)(A) for determining the finality of a state conviction, tolling under § 2244(d)(2) does *not* include the time for seeking review in the United States Supreme Court through a petition for certiorari.

[13] A strong argument can be made, however, that the motion, which was construed as a petition for post-conviction relief and denied as untimely filed, was not "properly filed" within the meaning of § 2244(d)(2). *See, e.g., Allen,* 552 U.S. at 6-7 (citing *Pace v. DiGuglielmo,* 544 U.S. 408, 414, 417 (2005)) (holding that a state post-conviction petition rejected as "untimely" by the state courts, was not "properly filed" under § 2244(d)(2)).

[14] It is noted that the 45-day period actually expired on December 15, 2012, which fell on a Saturday. Under Ohio S.Ct.Prac.R. 3.03(A)(1), "[i]f the last day of the period is a Saturday, Sunday, or legal holiday, the period runs until the end of the next day that is not a Saturday, Sunday, or legal holiday." Therefore, the 45-day appeal period extended in this case through the next business day—Monday, December 17, 2012.

July 27, 2015), *appeal filed*, No. 15-3958 (6th Cir. Sept. 2, 2015).  The statute commenced

running again on December 18, 2012 and ended 145 days later on or about May 13, 2013.[15]

Finally, with respect to any claims governed by the later limitations provision set forth in

§ 2244(d)(1)(D), the undersigned will again assume, solely for the sake of argument, in

petitioner's favor that the statute of limitations was tolled during the pendency of the state post-

conviction proceedings and did not begin to run until December 18, 2012, one day after those

proceedings concluded on December 17, 2012.  Therefore, even under the best possible scenario

for petitioner, the statute of limitations expired on December 18, 2013, nearly a year before the

instant action commenced.

The AEDPA's statute of limitations is subject to equitable tolling, *see Holland,* 560 U.S.

at 645, "when a litigant's failure to meet a legally-mandated deadline unavoidably arose from

circumstances beyond the litigant's control."  *Hall v. Warden, Lebanon Corr. Inst.,* 662 F.3d 745,

749 (6th Cir. 2011) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)).  Equitable

tolling is granted "sparingly."  *Id.*  (quoting *Robertson*, 624 F.3d at 784).  A habeas petitioner is

entitled to equitable tolling only if he establishes that (1) "he has been pursuing his rights

diligently;" and (2) "some extraordinary circumstance stood in his way and prevented timely

filing."  *Id.* (quoting *Holland*, 560 U.S. at 649 (internal quotations omitted)); *see also Pace v.

DiGuglielmo,* 544 U.S. 408, 418 (2005).  Although the Sixth Circuit previously utilized a five-

---

[15] Even assuming, solely for the sake of argument, that the statute of limitations was tolled during the 206-day period before petitioner filed his delayed appeal motion with the Ohio Supreme Court, the instant petition filed at the earliest on November 18, 2014 is still untimely.  Even under that scenario, the statute of limitations, would have begun to run on June 9, 2011 for 14 days, and after taking into account the tolling of the statute during the pendency of petitioner's post-conviction motion filed on June 23, 2011, would have started running again on December 18, 2012 to expire 351 days later on December 4, 2013.

factor approach in determining whether a habeas petitioner is entitled to equitable tolling, *Holland*'s two-part test has replaced the five-factor inquiry as the "governing framework" to apply.  *Hall*, 662 F.3d at 750 (citing *Robinson v. Easterling,* 424 F. App'x 439, 442 n.1 (6th Cir. 2011)).  "With *Holland* now on the books, the 'extraordinary circumstances' test, which requires both reasonable diligence and an extraordinary circumstance, has become the law of this circuit." *Id.*; *see also Patterson v. Lafler,* 455 F. App'x 606, 609 n.1 (6th Cir. 2012).

Petitioner has argued for equitable tolling of the limitations period under the prior five-factor approach that is no longer utilized in the Sixth Circuit.  (*See* Doc. 12).  He contends that he is entitled to equitable tolling of the limitations period because he has been diligent in pursuing his rights.  However, the undersigned disagrees with that argument because petitioner has not provided any justification for his long delay in seeking federal habeas relief, years after he was resentenced in August 2010, his delayed appeal motion was denied by the Ohio Supreme Court in June 2011, and the final entry was filed by the Ohio Court of Appeals in the state post-conviction proceedings in October 2012.  In any event, petitioner is not entitled to equitable tolling of the statute of limitations in the absence of any showing of an "extraordinary circumstance" that prevented him from filing a timely federal habeas petition within the one-year limitations periods applicable to this case.

Finally, petitioner has not shown that the procedural bar to review should be excused based on a colorable showing of actual innocence.  The Supreme Court has held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass" a statute of limitations bar to review.  *McQuiggin v. Perkins*, __ U.S. __, 133 S.Ct. 1924, 1928 (2013).  The Supreme Court has made it clear, however, that "tenable actual-innocence gateway pleas are rare:

18

'[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of . . . new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id.* (quoting *Schlup v. Delo,* 513 U.S. 298, 329 (1995)); *see also House v. Bell*, 547 U.S. 518, 538 (2006) (pointing out that the *Schlup* actual-innocence standard is "demanding and permits review only in the extraordinary case") (internal citation and quotation marks omitted). To establish a credible gateway claim of actual innocence, the petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324; *see also Connolly v. Howes*, 304 F. App'x 412, 417 (6th Cir. 2008).

In this case, petitioner has not established a credible claim of actual innocence. Petitioner has presented no new evidence to support an actual innocence claim and has merely generally averred that he is innocent. Petitioner's self-serving statement is "inherently suspect" and unreliable. *Cf. Freeman v. Trombley*, 483 F. App'x 51, 58 (6th Cir. 2012); *see also Betts v. Tibbals,* No. 1:11cv01107, 2014 WL 4794530, at *48 (N.D. Ohio Sept. 24, 2014) (finding the petitioner's own self-serving affidavit to be lacking in credibility and reliability). Moreover, to the extent petitioner challenges the sufficiency of the evidence supporting his convictions, actual innocence means factual innocence, not mere legal insufficiency. *House v. Bell,* 547 U.S. 518, 538 (2006); *Carter v. Mitchell,* 443 F.3d 517, 538 (6th Cir. 2006) (citing *Bousley v. United States,* 523 U.S. 614, 623 (1998)); *Wright v. Lazaroff*, 643 F. Supp.2d 971, 989 (S.D. Ohio 2009) (Barrett, J.; Hogan, M.J.); *see also Vanwinkle v. United States,* 645 F.3d 365, 369 (6th Cir. 2011).

Accordingly, in sum, the undersigned concludes that petitioner's claims for relief are barred from review by the one-year statute of limitations governing habeas corpus actions brought

19

pursuant to 28 U.S.C. § 2254. Even after applying the most favorable statute of limitations to petitioner's claims, as well as assuming in petitioner's favor that the statute of limitations was tolled not only during the pendency of petitioner's delayed appeal motion to the Ohio Supreme Court but also during the pendency of the state post-conviction proceedings, the instant petition was filed nearly one year too late. Equitable tolling principles do not apply to further extend the limitations period or otherwise avoid the statute of limitations bar to review in this case. Therefore, respondent's motion to dismiss (Doc. 9) should be **GRANTED**.

### IT IS THEREFORE RECOMMENDED THAT:

1. Respondent's motion to dismiss (Doc. 9) be **GRANTED**, and petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DISMISSED** with prejudice.

2. A certificate of appealability should not issue with respect to any of petitioner's time-barred claims because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether the Court is correct in its procedural ruling that such claims are subject to dismissal on statute of limitations grounds.[16]

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY**

---

[16] Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in his time-barred grounds for relief. *See Slack,* 529 U.S. at 484.

20

petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R.

App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


Date:   2/4/2016                           s/ J. Gregory Wehrman
                                           J. Gregory Wehrman
                                           United States Magistrate Judge

21

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JOEY S. WESTBROOK,                                    Case No. 1:14-cv-934
          Petitioner,

                                                      Dlott, J.
          vs                                          Wehrman, M.J.

WARDEN, SOUTHEASTERN
CORRECTIONAL INSTITUTION,
          Respondent.


**NOTICE**

        Pursuant to Fed. R. Civ. P. 72(b), WITHIN 14 DAYS after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

WITHIN 14 DAYS after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc

22